UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

SECURITIES & EXCHANGE
COMMISSION,

                Plaintiff,

    -against-

LEE COHEN,

                Defendant.

-------------------------------------------------------- X

**REPORT AND
RECOMMENDATION**
23-CV-3309 (AMD) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

    The Securities and Exchange and Commission (the "S.E.C.") brings this securities fraud enforcement action against Defendant Lee Cohen under Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a); Sections 9(a)(1), 9(a)(2), 10(b), and 15(a)(1) of the Securities and Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78i(a)(1), 78i(a)(2), 78j(b), and 78o(a)(1); and Rule 10b-5 of the Exchange Act, 17 C.F.R. § 240.10b-5. (Compl., ECF No. 1, ¶ 10.) The S.E.C. alleges that Defendant participated in a fraudulent scheme to "manipulate trading in the stock of HD View 360 Inc." ("HD View") along with two other individuals who have been charged in parallel actions.[1] (*Id*. ¶¶ 1–2.)

    On June 26, 2023, and November 7, 2023, the Clerk of Court certified Defendant's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, and the S.E.C. subsequently moved for a default judgment on March 15, 2024. (Certificate of Default,

---

[1] *See S.E.C. v. Mancino*, No. 18-CV-1316 (GRB) (LGD) (E.D.N.Y.) (where both Dennis Mancino and William Hirschy were defendants); *United States v. Mancino*, No. 18-CR-296 (KAM) (E.D.N.Y.) (same).

ECF Nos. 10, 17; Mot. for Default J., ECF No. 21.) For the reasons set forth below, the Court recommends that the S.E.C.'s motion be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The S.E.C. commenced this action against Cohen on May 2, 2023. (Compl., ECF No. 1.) The S.E.C. alleges that Cohen was involved in a matched trading scheme (the "Scheme") initially orchestrated by Dennis Mancino and William Hirschy.[2] (*Id.* ¶¶ 2–3.) The S.E.C. alleges that Mancino and Hirschy commenced the Scheme in early 2017 and were first assisted by two individuals, "Individual C" and "Individual D," prior to Cohen's introduction to the conspirators. (*Id.* ¶ 18; *see id.* ¶ 19.) The complaint alleges that Individuals C and D introduced Cohen to Hirschy via WhatsApp in or about July 2017, after recommending Cohen to Hirschy as a possible call room operator for the Scheme. (*Id.* ¶¶ 18–19.)

The Scheme involved manipulating the price of the stock for HD View from zero to over five dollars per share. (*Id.* ¶ 2.) According to the complaint, Cohen, Hirschy, Individual C, and Individual D made an agreement whereby Individual C and Individual D would provide Cohen with lists of potential investors and Cohen would subsequently solicit the potential investors to purchase HD View stock at artificial prices provided by Hirschy. (*Id.* ¶ 20.) The complaint states that the Scheme mainly targeted senior citizens. (*Id.*) Once Cohen believed a prospective investor would place a

---

[2] A matched trading scheme refers to an arrangement in which a person acting as a broker places a buy/sell order in cooperation with another person, who would then place a buy/sell order at the same time and at the same price or quantity. *See* 10 Myoung Jae Chung et al., Price Manipulation Through False Trades, *Int'l Cap. Markets & Sec. Reg.* § 57:52; *see also S.E.C. v. Kwak*, No. 04-CV-1331 (JCH), 2008 WL 410427, at *1 (D. Conn. Feb. 12, 2008).

buy order, he would inform Hirschy, who would arrange an offer to sell the stock at a matched price. (*Id.*)

According to the complaint, Cohen and his workers made telephone calls to potential investors in the United States from a call room in the Philippines. (*Id.* ¶ 24.) The S.E.C. alleges that Cohen "personally misled" every investor who purchased stock in HD View through the call room and falsely presented himself to potential investors as having "skin in the game," claiming he made money through warrants HD View would issue based on sales. (*Id.* ¶¶ 25–26.) In reality, Cohen's profit was from sales commissions based on the buy orders the investors placed. (*Id.* ¶ 26.) Cohen also misled investors about the true value of the stock, as he knew the prices were artificially high yet presented HD View as a "hot new growth stock" that was "actively traded." (*Id.* ¶ 27.)

The complaint further alleges that Cohen withdrew from the Scheme after coming to believe he was not receiving the commissions he was owed per the agreement made with Hirschy, Individual C, and Individual D. (*Id.* ¶ 31.) Cohen believed that Individual C and Individual D were not paying him the amount he was due and complained to Hirschy, who subsequently arranged for "Individual E" to remit sales commissions to Cohen in order to convince him to continue his involvement in the Scheme. (*Id.* ¶¶ 32–34.) The S.E.C. claims that from at least July 2017 to at least November 2017 (the "Relevant Period"), Cohen received at least $46,500 in sales commissions due to his participation in the Scheme. (*Id.* ¶¶ 1, 34.) Cohen stopped sending additional matched trades to Hirschy at some point in November or December 2017. (*Id.* ¶ 34.)

A covert law enforcement operation uncovered the Scheme in approximately November 2017.[3] Defendant Cohen was arrested on March 16, 2022, on a charge of conspiracy to commit securities fraud for his involvement in the Scheme, as well as an unrelated money laundering charge. (*Id.* ¶ 37.) *See also S.E.C. v. Cohen*, No. 22-CR-209 (KAM) (E.D.N.Y.). The United States Attorney's Office filed a criminal complaint against Cohen; on August 1, 2022, Cohen pled guilty to a charge of conspiracy to commit securities fraud based on his role in the Scheme. (Compl., ECF No. 1, ¶ 37.) *See also Cohen*, No. 22-CR-209 (KAM).

In this action, the S.E.C. asserts civil claims against Cohen for violating Exchange Act Sections 9(a)(1) and (2); 10(b) and Rule 10b-5; and 15(a)(1), as well as Section 17(a) of the Securities Act. (*Id.* at 14–16.) The S.E.C. requested in the complaint that the Court enter a final judgment (1) finding that Cohen violated the securities laws and rules as alleged against him in the complaint, (2) permanently restraining and enjoining Cohen and all persons in active concert with him from future violations of the federal securities laws, (3) ordering Cohen to disgorge any and all ill-gotten gains received directly or indirectly from the violations alleged in the complaint, (4) permanently prohibiting Cohen from participating in any offering of penny stock, and (5) granting any further relief the Court deems just. (Compl., ECF No. 1, ¶ 17.)

---

[3] This law enforcement operation led to the arrests of Mancino and Hirschy, who both pled guilty to securities law violations and wire fraud charges. (Compl., ECF No. 1, ¶ 35.) *See also Mancino*, No. 18-CR-296 (KAM), Sept. 17, 2018 ECF Min. Entry, ECF No. 26. The S.E.C. filed a parallel civil enforcement action in March 2018 against Mancino and Hirschy. (Compl., ECF No. 1, ¶ 36.) *See also Mancino*, No. 18-CV-1316 (GRB) (LGD), Compl., ECF No. 1.

On September 23, 2023, the S.E.C. effected personal service of the summons and complaint on Defendant at 154 Ember Lane, Esher, Surrey, England, United Kingdom.[4] (Proof of Service, ECF No. 15, at ECF p. 1.) On October 30, 2023, the S.E.C. requested that the Clerk of Court issue a certificate of default because Defendant had failed to appear or otherwise defend this action. (*See* Req. for Certificate of Default, ECF No. 16.) The Clerk of Court entered Defendant's default on November 7, 2023. (Clerk's Entry of Default, ECF No. 17.) The S.E.C. submitted a status report on November 16, 2023, indicating that it intended to move for a default judgment following its assessment of the potential impact that *S.E.C. v. Govil*, No. 22-1658, 2023 WL 7137291 (2d Cir. Oct. 31, 2023), would have on proper calculations of disgorgement and prejudgment interest. (Status Report, ECF No. 18.)

On December 13, 2023, the S.E.C. requested an extension of time to file a motion for a default judgment to assess *Govil*'s impact on the determination of monetary remedies in this case and to obtain the S.E.C. Commissioners' approval for said remedies. (Mot. for Extension of Time to File, ECF No. 19.) The Court granted the extension on December 15, 2023, and directed the S.E.C. to initiate default motion practice by March 15, 2024. (Dec. 15, 2023 ECF Order.) The S.E.C. dismissed its disgorgement claim against Defendant with prejudice on March 15, 2024. (Notice of

---

[4] The S.E.C. initially attempted to serve Defendant on May 16, 2023, through coordination with the United States Marshals Service, as Defendant was incarcerated at the time. (Process Receipt & Return, ECF No. 8; *see* Letter, ECF No. 11 (stating that Defendant completed his sentence on June 1, 2023).) After entry of default, Defendant Cohen's attorney from the corresponding criminal matter — who is not representing Defendant in the instant matter — sent a letter to the Court claiming that Defendant was never served. (Letter, ECF No. 11; Clerk's Entry of Default, ECF No. 10.) On August 17, 2023, the S.E.C. filed a status report stating that it was no longer confident that Defendant was effectively served on May 16, 2023, and that it planned to locate and properly serve Defendant. (Status Report, ECF No. 13, at pp. 2–3.)

Voluntary Dismissal, ECF No. 20.) The S.E.C. also filed a motion for a default judgment on March 15, 2024, requesting that the judgment (1) find Defendant Cohen "liable for violations of the securities laws as charged in the SEC's Complaint," (2) "enjoin[] Cohen from future violations," and (3) "[impose] a penny stock bar against Cohen." (Mot. for Default J., ECF No. 21, at ECF p. 1.) The S.E.C. filed a certificate of service, noting that copies of the motion, memorandum in support, and proposed final default judgment were mailed to Defendant's last known address. (Certificate of Service, ECF No. 21-4.) On April 30, 2024, the S.E.C. filed a supplemental certificate of service, certifying that a copy of the motion and supporting papers were properly served on Defendant on March 15, 2024, and that they were not returned.[5] (*See* Suppl. Certificate of Service, ECF No. 23.) The Court held a Status Conference on May 29, 2024, at which Defendant did not appear. (May 29, 2024 ECF Min. Entry & Order.)

## DISCUSSION

### I.  Legal Standards for Default

Federal Rule of Civil Procedure 55 "provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or

---

[5] On May 28, 2024, the S.E.C. filed a declaration, stating that the copies of the motion and supporting papers sent to Defendant on March 15, 2024, were returned unopened, and that Defendant's brother notified the S.E.C. that Defendant no longer lived at 154 Ember Lane, Esher, Surrey, England, United Kingdom. (*See* Pl.'s Suppl. Decl. of Service, ECF No. 25, at 1.) The S.E.C. alleged that, despite the fact that this attempt at delivering the motion was unsuccessful, Defendant still had actual notice of the default motion due to the formal service of the summons and complaint on September 23, 2023. (*Id.* at 2.) A second supplemental certificate of service was filed on May 29, 2024, indicating that copies of the motion and supporting papers were sent to Defendant's brother's email address, copying Defendant's former legal counsel in his corresponding criminal case, and also to an address that Defendant's brother provided — 32 Horton Street, Marrickville, Sydney, NSW2204, Australia. (Second Suppl. Certificate of Service, ECF No. 26.)

otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b) (2021). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for a default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[6] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

---

[6] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2 (2021). Having reviewed the filings in this case, the Court finds that the S.E.C.'s motion papers comport with these rules. Specifically, the S.E.C. (1) requested a certificate of default in accordance with Local Rule 55.1(a), (*see* Req. for Certificate of Default, ECF Nos. 9, 16); (2) demonstrated that Defendant has failed to defend the action and that the pleadings were properly served, in accordance with Local Rule 55.1(b), (Mem. in Supp. of Mot. for Default J., ECF No. 21-1, p. 2; Proof of Service, ECF No. 15); and (3) certified the mailing of the motion papers to Defendant at his last known address in accordance with Local Rule 55.2(c), (Certificate of Service, ECF No. 21-4; *see* Suppl. Certificate of Service, ECF No. 23). While the first mailing of the default paperwork was returned to the S.E.C. unopened, (*see* Pl.'s Suppl. Decl. of Service, ECF No. 25, at ECF p. 1), the S.E.C. is still in compliance with Local Rule 55.2(c) because it filed a second supplemental certificate of service "setting forth [the fact that it was returned], together with the reason provided for return." (Second Suppl. Certificate of Service, ECF No. 26.) E.D.N.Y. Local Civ. R. 55.2 (2021).

Here, the S.E.C. seeks a final judgment (1) finding that Defendant is liable for violations of the securities laws and regulations; (2) enjoining Defendant from engaging in future violations; and (3) imposing a penny stock bar against Defendant. (Mot. for Default J., ECF No. 21, at 1.) For the following reasons, the Court recommends entry of a default judgment in the S.E.C.'s favor as detailed below.

## II. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly

8

served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g., United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *Antoine*, 489 F. Supp. 3d at 81.

Defendant's failure to respond or otherwise appear in this action supports a finding of willfulness. The S.E.C. adequately served Defendant via in-person service by a process server at his home, 154 Ember Lane, Esher, Surrey, England, United Kingdom, on September 23, 2023. (Proof of Service, ECF No. 15, at ECF p. 1.) *See also* Fed. R. Civ. P. 4(c), (f)(1). Defendant did not respond within 21 days of service. (*See* Status Report, ECF No. 18, at p. 2.) Defendant has also received ample notice of the default proceedings. (*See* Apr. 19, 2024 ECF Scheduling Order (directing the Clerk of Court to mail the scheduling order, a Notice to Defendants, and the full docket to Defendant at his last-known address in England and to his counsel in the criminal proceedings); Suppl. Certificate of Service, ECF No. 23 (noting that the mailed motion papers had not been returned to sender after six weeks); Second Suppl. Certificate of Service, ECF No. 26 (noting that additional copies of the default motion papers were sent via electronic mail to Defendant's bother, Defendant's former criminal attorney, and to Defendant's new address, 32 Horton Street, Marrickville, Sydney, NSW2204, Australia).)

Although Defendant failed to respond to the complaint or appear formally in this case, his brother has communicated with the S.E.C and with Defendant's former criminal attorney. (*See* Pl.'s Suppl. Decl. of Service, ECF No. 25, at 1.) The S.E.C. reports that Defendant's brother has indicated that Defendant does not understand the proceedings and that he would be unable to attend the default motion hearing. (*See id*. at 1–2.) The S.E.C. attached correspondence with Defendant's brother, indicating that Defendant has "already agreed to not ever touch penny stocks again" and inquiring as

to how to resolve the matter. (Email from Defendant's brother to S.E.C. attorney, ECF No. 25-1, at ECF p. 1 (emphasis omitted).)

While Defendant has made contact through his brother, the Court notes that Defendant has not indicated any defenses against the S.E.C.'s claims. (*See id.*) Additionally, although the Court instructed Defendant as to how he may communicate with the Court, including regarding any factual or legal objections to the S.E.C.'s claims, Defendant has not registered any objections or indicated a willingness to proceed *pro se*. (*See* Notice to Def., ECF No. 22.) Considering the totality of the circumstances, as well as the evidence that Defendant has notice of the proceedings against him, the Court weighs this factor in favor of default.

## B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendant has failed to respond to the complaint or offer any suggestion of a defense. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). In addition, Defendant pled guilty to a charge of conspiracy to commit securities fraud contrary to Rule 10b-5, 17 C.F.R. § 240.10b-5. *See S.E.C. v. Cohen*, No. 22-CR-209 (KAM), Information, ECF No. 11, at 2; *Cohen*, No. 22-CR-209 (KAM), Aug. 1, 2022 ECF Min. Entry, ECF No. 27. The record suggests that Defendant does not have a meritorious defense — accordingly, "this factor weighs in favor of granting a default judgment." *Joseph*, 970 F. Supp. 2d at 143.

10

### C. Prejudice

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)), *report and recommendation adopted*, Jan. 26, 2009 ECF Endorsement). In light of Defendant's failure to respond to both the S.E.C.'s and the Court's notices, "there is no indication that requiring [the S.E.C.] to take further steps . . . would be effective in eliciting a response from Defendant[]." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that the S.E.C. would be unfairly prejudiced by denial of the motion for default.

All three *Enron Oil* factors weigh in favor of entering a default judgment. Seeing no other equitable reason for denying the S.E.C.'s motion, the Court recommends entering a default judgment.

## III. Liability

### A. Exchange Act Section 10(b), Rule 10b-5, and Securities Act Section 17(a)

To establish a civil claim under Section 10(b) of the Exchange Act and Rule 10b-5, the S.E.C. must allege that "in connection with the purchase or sale of a security the defendant, acting with scienter, made a material misrepresentation (or a material omission if the defendant had a duty to speak) or used a fraudulent device." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1467 (2d Cir. 1996); *see also S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir. 1999); *S.E.C. v. Opulentica, LLC*, 479 F. Supp. 2d 319, 327 (S.D.N.Y. 2007). "[S]cienter requires proof that the defendant acted with 'a mental state embracing intent to deceive, manipulate, or defraud.'" *S.E.C. v. Penn*, 225 F. Supp. 3d 225, 236 (S.D.N.Y. 2016) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n.12

11

(1976)); *see also S.E.C. v. Obus*, 693 F.3d 276, 286 (2d Cir. 2012). A misrepresentation or omission is considered material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (quoting *TSC Indus., Inc. v. Northway*, 426 U.S. 438, 449 (1976)); *see also First Jersey Sec., Inc.*, 101 F.3d at 1466 ("A fact will be considered material within the meaning of [Rule 10b-5] if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total' mix of information available." (quotation marks omitted)).

Liability under Section 17(a) of the Securities Act[7] is established with "essentially the same elements [as Section 10(b) and Rule 10b-5 of the Exchange Act] . . . in connection with the offer or sale of a security." *First Jersey Sec.*, 101 F.3d at 1467. However, scienter is not necessary to establish liability under Section 17(a)(2)–(3). *Id.*

---

[7] Title 15, United States Code, Section 77q provides, in relevant part, as follows:

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in section 78c(a)(78) of this title) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

Here, the Court finds that the S.E.C. has adequately alleged that Defendant Cohen violated Section 10(b) of the Exchange Act and Rule 10b-5, as well as Section 17(a) of the Securities Act. The S.E.C. alleges that Cohen made various material misrepresentations in connection with the purchase or sales of securities. (Compl., ECF No. 1, ¶¶ 18–30.) While attempting to sell securities, Cohen misled investors by portraying HD View as a "hot new growth stock" that was actively traded, even though the prices were artificially high, which would be a significant fact to a reasonable investor who is deciding to purchase a stock. (*Id.* ¶ 27.) *See also Basic, Inc.*, 485 U.S. at 231–32. Cohen also allegedly told prospective investors that his services were free and that he only made money by virtue of warrants that HD View agreed to issue based on his sales, when he actually received commissions based on the amount of buy orders the investors placed at his recommendation. (Compl., ECF No. 1, ¶ 26.) It may be reasonably inferred that this misrepresentation would have been material since the fact that a broker would make a commission on sales is likely to have "significantly altered the 'total mix' of information" for a reasonable investor. *Basic, Inc.*, 485 U.S. at 231–32 (quotation marks omitted). Additionally, the S.E.C. alleges that Cohen knowingly made these false representations to potential investors in order to "serve his own pecuniary interest," (Compl., ECF No. 1, ¶ 30), which conduct satisfies the "obtain money" element of Section 17(a). *See* 15 U.S.C. § 77q. Finally, the S.E.C. avers that Cohen knew that Mancino, Hirschy, or entities that they controlled would enter matched offers in order to deceive investors into believing the stock was actively traded, which satisfies the element of scienter. (*Id.*) *See also Obus*, 693 F.3d at 286. Taking these allegations as true in the context of this default, the Court finds that the S.E.C. has plausibly alleged that Defendant Cohen violated Section 10(b) of the Exchange Act, Rule 10b-5, and Section 17(a) of the Securities Act.

## B. Exchange Act Section 9(a)(1) and (9)(a)(2)

To establish liability under Section 9(a)(1) of the Exchange Act,[8] the S.E.C. must "prove the existence of (1) a wash sale or matched orders in a security (2) done with scienter (3) for the purpose of creating a false or misleading appearance of active trading in that security." *S.E.C. v. Malenfant*, 784 F. Supp. 141, 144 (S.D.N.Y. 1992) (quotation marks omitted). Similar to Section 9(a)(1), liability under Section 9(a)(2)[9] of the Exchange Act is established by the S.E.C.'s demonstrating "(1) a series of transactions in a security creating actual or apparent trading in that security or raising or depressing the price of that security, (2) carried out with scienter and (3) for the

---

[8] Title 15, United States Code, Section 78i(a)(1) provides, in relevant part, as follows:

It shall be unlawful for any person, directly or indirectly, by the use of the mails or any means or instrumentality of interstate commerce, or of any facility of any national securities exchange, or for any member of a national securities exchange—

(1) For the purpose of creating a false or misleading appearance of active trading in any security other than a government security, or a false or misleading appearance with respect to the market for any such security, (A) to effect any transaction in such security which involves no change in the beneficial ownership thereof, or (B) to enter an order or orders for the purchase of such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the sale of any such security, has been or will be entered by or for the same or different parties, or (C) to enter any order or orders for the sale of any such security with the knowledge that an order or orders of substantially the same size, at substantially the same time, and at substantially the same price, for the purchase of such security, has been or will be entered by or for the same or different parties.

[9] Title 15, United States Code, Section 78i(a)(2) provides, in relevant part, as follows:

(2) To effect, alone or with 1 or more other persons, a series of transactions in any security registered on a national securities exchange, any security not so registered, or in connection with any security-based swap or security-based swap agreement with respect to such security creating actual or apparent active trading in such security, or raising or depressing the price of such security, for the purpose of inducing the purchase or sale of such security by others.

purpose of inducing the security's sale or purchase by others." *Sharette v. Credit Suisse Int'l*, 127 F. Supp. 3d 60, 78 (S.D.N.Y. 2015) (quotation marks omitted); *see also Malenfant*, 784 F. Supp. at 144.

Here, the Court finds that the S.E.C. has adequately alleged that Defendant Cohen violated Section 9(a)(1) and (2) of the Exchange Act. Regarding Section 9(a)(1), the S.E.C. has demonstrated that its allegations satisfy all three elements of liability as follows. First, the S.E.C. alleges that Cohen was involved in generating matched orders as part of the Scheme, as evidenced by Cohen's agreement with Mancino and Hirschy that they would arrange matched orders when Cohen found a potential investor for HD View stock. (*See* Compl., ECF No. 1, ¶¶ 3, 7, 20, 22.) In addition, the allegations illustrate Cohen's scienter and intent to create a false or misleading appearance of active trading in that the S.E.C. alleges that Cohen induced investors to place buy orders with knowledge of the conspirators' plan to place matched orders, which would both create the appearance of active trading in HD View stock and serve Cohen's own pecuniary interests. (*Id.* ¶ 30.) Section 9(a)(2)'s requirement that a defendant partake in a "series of transactions" in a security, creating actual or apparent trading, is demonstrated by the allegation that there were "over 1,400 trades in HD View stock during the Relevant Period" in furtherance of the Scheme. (*Id.* ¶ 29.) The scienter and purpose elements of Section 9(a)(2) mirror those of Section 9(a)(1) and are therefore satisfied.

## C. Exchange Act Section 15(a)(1)

To establish liability under Section 15(a)(1) of the Exchange Act, the S.E.C. must demonstrate that a defendant has acted as a broker and "ma[de] use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance with subsection (b) of this section." 15 U.S.C.

§ 78o(a)(1). A broker is defined as someone who "'engaged in the business of effecting transactions in securities for the account of others.'" *S.E.C. v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003) (quoting 15 U.S.C. § 78c(a)(4)(A)). In determining whether an individual is a broker, courts have emphasized "whether the conduct of the individual may be characterized by a certain regularity of participation in securities transactions at key points in the chain of distribution." *Rhee v. SHVMS, LLC*, No. 21-CV-4283 (LJL), 2023 WL 3319532, at *8 (S.D.N.Y. May 8, 2023) (quotation marks and emphasis omitted). Additionally, courts consider whether the individual

> 1) is an employee of the issuer; 2) received commissions as opposed to a salary; 3) is selling, or previously sold, the securities of other issuers; 4) is involved in negotiations between the issuer and the investor; 5) makes valuations as to the merits of the investment or gives advice; and 6) is an active rather than passive finder of investors.

*S.E.C. v. Hansen*, No. 83-CV-3692 (LPG), 1984 WL 2413, at *10 (S.D.N.Y. Apr. 6, 1984) (citing N. Wolfson, R. Phillips & T. Russo, *Regulation of Brokers, Dealers and Securities Markets*, § 1.06 (1st ed. 1977) at 1–12); *see also Martino*, 255 F. Supp. 2d at 283 (same); *S.E.C. v. CKB168 Holdings, Ltd.*, 210 F. Supp. 3d 421, 453 (E.D.N.Y. 2016) (same). However, courts do not require that the S.E.C. establish all of these factors; these factors are simply "relevant to a determination of whether an individual acted as a broker." *Hansen*, 1984 WL 2413, at *10; *see also S.E.C. v. StratoComm Corp.*, 2 F. Supp. 3d 240, 262 (N.D.N.Y. 2014), *aff'd*, 652 F. App'x 35 (2d Cir. 2016). Additionally, "[t]he Commission need not prove the broker's scienter to establish a violation of Section 15(a)." *Martino*, 255 F. Supp. 2d at 283; *see also StratoComm Corp.*, 2 F. Supp. 3d at 262.

In this case, the Court finds that the S.E.C. has adequately alleged that Cohen violated Section 15(a) of the Exchange Act by acting as an unregistered broker. The S.E.C. alleges that Cohen solicited investors to purchase securities, received transaction-based commissions, "ma[de] valuations as to the merits of the investment[s]," and was

an active finder of investors, despite not having a license to sell stocks or ever registering with the Commission. (Compl., ECF No. 1, ¶¶ 38–39.) Specifically, as set forth above, the S.E.C. alleges that Cohen solicited investors to purchase securities while operating a call room in the Philippines, effectively acting as a broker. (*Id.* ¶ 24.) Instead of receiving a salary, Cohen received commissions based on the percentage of HD View sales made, as a registered broker would. (*Id.* ¶ 26.) The S.E.C. also alleges that Cohen offered evaluations of the merits of HD View stock to potential investors by portraying HD View as a "hot new growth stock" when recommending its purchase. (*Id.* ¶ 27.) Additionally, the S.E.C. alleges that Cohen was an active finder of investors as he and his workers called potential investors, targeting those he had previously convinced to purchase stock in addition to those whose names were given to him by Individuals C and D. (*Id.* ¶ 24.) Cohen's workers also made cold calls to targeted investors using a script Cohen provided and were instructed to forward "all promising leads" directly to Cohen, demonstrating that he actively sought out investors in the manner a broker would. (*Id.* ¶ 25.) *See also Hansen*, 1984 WL 2413, at *10. Given that Cohen participated in these securities transactions while he was unregistered as a broker, the Court finds that the S.E.C. has adequately alleged that he violated Section 15(a)(1) of the Exchange Act.

## IV. Relief

Having determined that the S.E.C. has adequately alleged Defendant Cohen's liability for violating Section 17(a) of the Securities Act, Sections 9(a)(1), 9(a)(2), 10(b), and 15(a)(1) of the Exchange Act, and Rule 10b-5, the Court respectfully recommends that the S.E.C. is entitled to appropriate relief as set forth below.

### A. Permanent Injunction

To award permanent injunctive relief for violations of the federal securities laws, "a court must look beyond the mere facts of past violations and demonstrate a realistic

likelihood of recurrence, but fraudulent past conduct gives rise to an interference of a reasonable expectation of continued violations." *Opulentica*, 479 F. Supp. 2d at 329; *see also S.E.C. v. Shapiro*, 494 F.2d 1301, 1308 (2d Cir. 1974). To determine if recurrence is likely, courts consider the following factors:

> the fact that the defendant has been found liable for illegal conduct; the degree of scienter involved; whether the infraction is an "isolated occurrence;" whether defendant continues to maintain that his past conduct was blameless; and whether, because of his professional occupation, the defendant might be in a position where future violations could be anticipated.

*S.E.C. v. Cavanagh*, 155 F.3d 129, 135 (2d Cir. 1998) (quotation marks omitted). In assessing whether future violations are likely, courts consider if the violations were "willful, blatant, and often completely outrageous." *See S.E.C. v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1100–01 (2d Cir. 1972). Injunctive relief can be entered against individuals after commission of their first offense. *Shapiro*, 494 F.2d at 1308. Finally, there is no requirement of bad faith in order to enjoin defendants. *Id.*

Here, the S.E.C. adequately alleges that Cohen's conduct satisfies a majority of the relevant factors. *See Cavanagh*, 155 F.3d at 135. Specifically, the S.E.C. alleges that Cohen was found liable for illegal conduct, which is supported by his previous guilty plea in the parallel criminal action. (*See* Compl., ECF No. 1, ¶¶ 9, 14, 37.) Cohen's scienter is evident given that he induced investors to place buy orders with the knowledge that a matching offer to sell the stock would be placed and did so to benefit monetarily. (*Id.* ¶ 30.) The S.E.C. alleges that this was not an isolated occurrence, which is supported by the timeframe of the Relevant Period. (*See id.* ¶¶ 1, 19, 34.) As set forth above, Cohen joined the Scheme in July 2017 and was involved until in or about November or December 2017. (*Id.*) During this time, over 1,400 trades in HD View were made, with Cohen responsible for "a significant number of the investors who made

18

these trades." (*Id.* ¶ 29.) While Cohen has pled guilty in the parallel criminal action, he has yet to answer to this case and accept responsibility, which weighs against him in terms of evaluating whether he has maintained blamelessness. (*See id.* ¶¶ 9, 14, 37; Mem. in Supp. of Mot. for Default J., ECF No. 21-1, at ECF pp. 13–14.)

### B. Penny Stock Bar

To award a permanent penny stock bar pursuant to 15 U.S.C. § 77t(g), courts examine the following criteria:

> (1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.

*S.E.C. v. Jean-Pierre*, No. 12-CV-8886 (LGS), 2015 WL 1054905, at *12 (S.D.N.Y. Mar. 9, 2015) (citing *S.E.C. v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995)).

The S.E.C. adequately alleges that Cohen's conduct satisfies a majority of the factors. *See Jean-Pierre*, 2015 WL 1054905, at *12. The egregiousness of the underlying securities law violation is demonstrated by the Scheme, which generated approximately $1,208,487 in proceeds from matched sales with Cohen's participation. (Compl., ECF No. 1, ¶ 29.) The S.E.C. also alleges facts from which to conclude that Cohen played a key leadership role in the fraud, which was pivotal to its success, given that he was running an entire call room in the Philippines in furtherance of the Scheme, by which he "personally misled every one of the investors who were induced to place a buy order for HD View stock" through the call room (*Id.* ¶¶ 24–25.) Additionally, the S.E.C. alleges that Cohen directed his call room workers that "promising leads" should be sent straight to him so he would have the opportunity to deliver his false sales pitch for HD View stock personally. (*Id.* ¶ 25.) Defendant also worked closely with Mancino and Hirschy, who created the Scheme, by immediately informing Hirschy of potential

investors in order to create matched sales. (*Id.* ¶¶ 2, 7.) Cohen's scienter is amply demonstrated by his inducement of investors to buy orders with knowledge of the matched offer scheme. (*Id.* ¶ 30.) The S.E.C. also alleges that Cohen had a significant economic stake in the Scheme; based on the number of sales to which he contributed, he was entitled to $180,000 to $200,000 by his own estimation. (*Id.* ¶ 29.) In terms of likelihood of recurrence, Cohen's willful and blatant conduct weighs in support of finding this factor. *See Manor Nursing Ctrs., Inc.*, 458 F.2d at 1100–01. Cohen engaged in the Scheme with the purpose of furthering his pecuniary interests, demonstrating willfulness. (Compl., ECF No. 1, ¶ 30.) In addition, Cohen outwardly lied to investors about his lack of pecuniary interest in the Scheme, as well as the value of HD View stock, which conduct qualifies as a blatant fraud. (*See id.* ¶¶ 4, 25–26.)

For all of these reasons, the Court respectfully recommends granting the S.E.C.'s request for injunctive relief and for a penny stock bar.

## CONCLUSION

The Court respectfully recommends that the S.E.C.'s motion for a default judgment (ECF No. 21) be granted, and that the attached proposed order and final default judgment be entered.

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically and a copy sent by mail to Defendant Lee Cohen. As a courtesy, the Court also respectfully directs the S.E.C. to provide a copy of this report and recommendation to Defendant forthwith and to file proof of same by **August 23, 2024**. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Ann M. Donnelly at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing.

Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

   **SO ORDERED.**

Dated: Brooklyn, New York
   August 16, 2024

          *Taryn A. Merkl*
          TARYN A. MERKL
          UNITED STATES MAGISTRATE JUDGE